IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

SID PROWELL,                                                    Case No. 2:14-cv-00337-SU

            Plaintiff,

      v.                                                        FINDINGS AND
                                                                RECOMMENDATION
CAM CREDITS, INC.,

            Defendant.
_____

SULLIVAN, Magistrate Judge:

## PENDING MOTIONS

        Sid Prowell, an individual residing in Baker County, Oregon, filed a Complaint against Cam

Credits, Inc., an Oregon corporation engaged in the business of collecting debts by mail and

telephone. Plaintiff alleges claims pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 *et seq.* ("FDCPA")[1] seeking declaratory and monetary relief. Plaintiff filed an amended

_____

        [1] Specifically, Plaintiff alleges in the Complaint: (1) violation of the FDCPA under 15 U.S.C. §
1692e(2)(A) for "[t]he false representation of the character, amount, or legal status of any debt;" (2)

1   –   FINDINGS AND RECOMMENDATION

complaint on June 3, 2014.  Plaintiff filed a motion for partial summary judgment on its claims for declaratory relief and statutory damages.  Defendant filed a motion for summary judgment against all claims set forth in the Complaint. For the reasons set forth below, defendant's motion for summary judgment should be granted; and plaintiff's motion for partial summary judgment should be denied.

## BACKGROUND

Defendant is an Oregon debt collection agency with offices in Baker City, Oregon. (Julie Hickerson Decl. ¶ 3, Dec. 3, 2014; Hickerson Decl. Ex. C at 1.) On November 28, 2011, Norco assigned an account to defendant for collection of amounts owed for welding supplies purchased by "Prowell Ranch"; the principal balance of the account was $98.14 ("Norco Account"). (Hickerson Decl. ¶ 4; Hickerson Decl. Ex A.) On March 13, 2012, Bingham, Bingham & Watt, LLP assigned an account to defendant for collection of amounts owed for accounting services used by plaintiff; the  principal balance of the account was $1,232.35 ("Bingham Account"). (Hickerson Decl. ¶ 5; Hickerson Decl. Ex. B.)  Defendant sent verification of the amounts owed to plaintiff on July 12, 2012, (Bingham Account) and January 7, 2013, (Norco Account). (Jeffrey Hasson Decl. Ex. B at 001,005, 018-019.) Defendant furnished information to credit reporting agencies that plaintiff owed $1,610.97 on the Bingham Account on May 4, 2012 and updated the Bingham Account on February 5, 2013. (Hickerson Decl. ¶ 20.)

_____

violation of the FDCPA under 15 U.S.C. § 1692f(1) for "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" in excess of the amount "expressly authorized by the agreement creating the debt or permitted by law;" and (3) violation of the FDCPA under 15 U.S.C. § 1692e(8) for "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. See generally Am. Comp.

Defendant filed a complaint in Small Claims Court ("Small Claims Complaint") against "Prowell aka Prowell Ranch" on February 15, 2013 for the unpaid accounts, and plaintiff was served with the Small Claims Complaint on February 25, 2013. (Hickerson Decl. ¶¶ 6–7; Hickerson Decl. Ex. C.) In the Small Claims Complaint, defendant alleged plaintiff owed $1,330.49 in principal, $385.50 in assigned interest, and $500.09 in agency interest, for a total sum of $2,216.08 owed on both accounts. (Hickerson Decl. Ex. C at 1.) Defendant now admits that the amounts were calculated incorrectly. (Hickerson Decl. ¶ 8.)

On March 6, 2013, plaintiff filed a counterclaim in Small Claims Court requesting injunctive and monetary relief against defendant alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and sections 807, 808, and 809[2] of the FDCPA. (Hickerson Decl. Ex. D at 2.) On March 12, 2013, defendant received a call from the Small Claims Court regarding the interest calculations in the Small Claims Complaint, which prompted defendant to review the file and discover the interest calculations were incorrect. (Hickerson Decl. ¶ 10.) Defendant's attorney sent a letter to Judge Williams at the Small Claims Court on March 14, 2013 discussing the Small Claims Court procedure related to dismissing plaintiff's counterclaim. (Hickerson Decl. Ex. E.)

When the parties appeared at trial on April 3, 2013, Judge Williams dismissed the counterclaim and set another hearing for April 17, 2013. (Hickerson Decl. ¶ 12.) Judge Williams also recalculated the total interest on the Bingham Account ($475.20) and Norco Account ($16.28). (Hickerson Decl. ¶¶ 13–14.) At the hearing on April 17, 2013, Judge Williams awarded defendant a judgment for $1,885.97.[3] (Hickerson Decl. ¶ 15.) Plaintiff paid defendant in full by cashier's

---

[2] Sections 807, 808, and 809 of the FDCPA correspond to 15 U.S.C. § 1692e, 15 U.S.C. § 1692f, and 15 U.S.C. § 1692g, respectively.

[3] Defendant adjusted the amounts owed on the Bingham and Norco Accounts prior to the April 17, 2013 hearing. (Julie Hickerson Dep. 48:19–22, Sept. 16, 2014.) At the hearing, Judge Williams further reduced the balance on the Bingham and Norco Accounts by approximately $1 and $4.52,

check, and on April 19, 2013, Judge Williams signed a Small Claims Judgment stating "Matter Settled Between Parties No Judgment Entered." (Hickerson Decl. ¶¶ 17–18; Hickerson Decl. Ex. F.) On May 7, 2013, Judge Williams dismissed the case with prejudice against further action. (Hickerson Decl. Ex. G.) Defendant notified the credit reporting agencies that the balance of the Bingham Account was $0.00 on May 17, 2013. (Hickerson Decl. ¶ 20.) On February 28, 2014, plaintiff filed his federal complaint alleging violations of the FDCPA.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 232 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

I.    Defendant's Motion for Summary Judgment

Defendant contends it is entitled to summary judgment on all of plaintiff's claims because (1) they are barred by the statute of limitations, (2) commercial claims are not subject to the FDCPA,

---

respectively. (Hickerson Dep. 48:23–50:10.) Defendant agreed to those changes, because they were not too far off from its own calculations. (Hickerson Dep. 48:25–49:3.)  There appears to be no explanation for the $1 difference in the amount owed on the Norco Account, other than the fact that different calculators were used and different people performed the calculations. (Hickerson Dep. 49:4–25.) The $4.52 difference in the amount owed on the Bingham Account was due to the timing of the calculation of interest. (Hickerson Dep. 50:2–13.) Judge Williams figured the interest starting on November 30, 2008, while Defendant figured the interest starting on October 1, 2008, which was the date of the last charge on the Bingham Account. (Hickerson Dep. 50:2–13.)

4  –  FINDINGS AND RECOMMENDATION

(3) they are precluded by claim preclusion and issue preclusion, and (4) they have been compromised and settled by the parties.

    A.    <u>Statute of Limitations</u>

The FDCPA protects consumers from unfair debt collection practices. 15 U.S.C. § 1692(e). Plaintiff alleges three violations of the FDCPA. First, plaintiff alleges defendant violated 15 U.S.C. § 1692f(1), which provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt [including, without limitation] (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Second, plaintiff alleges defendant violated 15 U.S.C. § 1692e(2)(A), which provides:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt [including, without limitation] . . . (2) The false representation of—(A) the character, amount, or legal status of any debt.

Finally, plaintiff alleges defendant violated 15 U.S.C. § 1692e(8), which provides:

> A debt collector may not use false, deceptive, or misleading representation or means in connection with the collection of any debt [including, without limitation] . . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

A plaintiff alleging a violation of the FDCPA must bring a claim "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff filed his original federal complaint on February 28, 2014. Therefore, the alleged violation of the FDCPA by defendant must have occurred between February 28, 2013 and February 28, 2014.

    1.    <u>Continuing violations</u>

Defendant contends the statute of limitations bars plaintiff's claims because the limitations period began to run when plaintiff discovered or should have discovered the FDCPA violation or, at the very latest, when defendant filed the Small Claims Complaint on February 15, 2013. (Def. Mtn. Summ. J. 7–8; Def. Reply to Pltf. Resp. to Def. Mtn. Summ. J. 5–6.) In support of defendant's argument that the limitations period began to run when it filed the Small Claims Complaint, defendant cites Ninth Circuit precedent holding that when the alleged FDCPA violation is the filing of the complaint itself, the limitations period begins to run on the date the complaint is filed. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).

Plaintiff alleges his FDCPA claim is "based on actions taken and representations made by defendant through the course of small claims litigation against plaintiff," not the initial filing of the Small Claims Complaint. (Complaint ¶ 9.)[4]  Plaintiff argues that *Naas* does not apply in this case and that his claims are not barred by the statute of limitations under a continuing violation theory. Plaintiff contends that defendant continued to violate the FDCPA when defendant: (1) learned it miscalculated the amount owed and failed to correctly revise the amount as of the April 17, 2013 hearing; and (2) sent a letter to the Small Claims Court on March 14, 2013 continuing to represent that plaintiff owed inflated amounts. (Pltf. Resp. to Def. Mtn. Summ. J. 5; Complaint ¶ 9; Pltf. Resp. to Def. Mtn. Summ. J. 2.)

In support of his argument, plaintiff cites case law stating "actions occurring *within* the limitations period are not necessarily off-limits under the FDCPA just because the actions fall within the scope of a lawsuit which was filed *outside* the limitations period." *Jones v. Inv. Retrievers, LLC*,

---

[4]  In fact, in a somewhat novel argument, plaintiff contends that the statute of limitations could not have begun to run when defendant filed his Small Claims Complaint because defendant had a bona fide error defense under the statute.  Plaintiff cites no authority for this argument.

2011 WL 1565851, at *3 (M.D. Pa. 2011) (emphasis in original). That is, independent violations of the FDCPA are actionable if they fall within the limitations period, even where the original complaint under the FDCPA is filed outside the limitations period. *Id.* (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)). However, the court in *Jones* also emphasized that "conduct must *independently* violate the FDCPA." *Id.* (emphasis in original). "New communications about old claims do *not* constitute independent violations . . . and the course of debt-collection litigation, without more, is not a continuing violation of the FDCPA." *Id.* (citing *Campos v. Brooksbank*, 120 F.Supp.2d 1271, 1274 (D.N.M. 2000); *Martin v. Sessoms & Rogers, P.A.*, 2011 WL 320015, at *3 (E.D.N.C. 2010) (emphasis in original)).

Plaintiff argues defendant committed an independent FDCPA violation when it presented the amount owed on the Bingham and Norco Accounts on April 17, 2014,[5] because Judge Williams further reduced the amount owed by approximately $5.52. (Pltf. Resp. to Def. Mtn. Summ. J. 4–7.) The Court finds Plaintiff's reasoning unpersuasive for the following reasons.

The case plaintiff cites does not support his argument. In *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151, at *3 (S.D.N.Y. 1998), the court found subsequent restatements of the alleged inflated amounts owed did not constitute independent FDCPA violations because the restatements were identical to the original statement. The court pointed out in its decision that the subsequent restatements had contained no new misrepresentations of the amount owed not present in the original complaint. *Id.* Plaintiff interprets *Calka* to hold that any subsequent misrepresentation, even downward adjustments, not matching the original complaint constitutes a new, independent

---

[5] Judge Williams had questioned the calculation of interest in the claim. As a result, defendant adjusted the claim downward twice to arrive at the amount paid by plaintiff. (Hickerson Dep. 48: 19-23-50:10.)

FDCPA violation. However, it simply does not follow that when a debt collector continues to restate the inflated amount owed, there is no independent FDCPA violation, but where a debt collector attempts to correct the amount owed during the course of the litigation, albeit in error, there is an independent FDCPA violation.

Events that are part of the course of litigation and communications that relate back to the original complaint are not independent FDCPA violations. *Simard v. LVNV Funding, LLC*, 2011 WL 4543956, at *6 (D. Mass. 2011). Some courts have recognized a "continuing violation theory" under the FDCPA where "each new communication begins a fresh statute of limitations period for the claim," *Nutter v. Messerli & Kramer, P.A.*, 500 F.Supp.2d 1219, 1223 (D. Minn. 2007). However, our Court has stated that "subsequent communications regarding an existing claim do not 'start a fresh statute of limitations period.'" *Linfoot v. Bernardi*, 2013 WL 958279, at *5 (D. Or. 2013) (citing *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1307 (S.D. Fla. 2009). Defendant's downward adjustment to the amount owed, after being advised by the Small Claims Court that its calculations were incorrect, was not a new FDCPA violation. The adjustment related to the original misstatement of the debt in the Small Claims Complaint. The same reasoning applies to the March 14, 2013 letter.[6]

> 2.    Discovery Rule

Plaintiff also alleges the discovery rule operates in his favor. The Ninth Circuit has held that a "discovery rule" applies to FDCPA claims, so that the "limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Magnum v.*

---

[6] The March 14, 2013 letter was sent to Judge Williams by an attorney representing defendant. It was essentially a request to enter an appearance and to file a motion within the Small Claims Court proceedings. The letter included reference to an estimate of the claims.

*Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009). Plaintiff argues he did not discover the FDCPA violations until Judge Williams informed him that the alleged amount owed was inflated at the April 3, 2014 hearing. (Pltf. Resp. to Def. Mtn. Summ. J. 7.) Yet, plaintiff filed his counterclaim specifically alleging FDCPA violations on March 6, 2013. (Henderson Decl. Ex. D.)

The Court finds plaintiff had reason to know the alleged amount owed was inflated on July 12, 2012, when he received a letter from defendant verifying the debt and stating the principal for the Bingham Account was $1,610.97, but the attached documentation showed the correct principal was $1,232.35. (Hasson Decl. Ex. B at 001, 005.) Plaintiff had more reason to know the alleged amount owed was inflated on January 7, 2013, when he received a letter from defendant verifying the debt and stating the principal for the Norco Account was $105.02, but the attached documentation showed the correct principal was $98.14. (Hasson Decl. Ex. B at 018–019.) Plaintiff knew or should have known that he had a potential claim under the FDCPA on July 12, 2012, January 7, 2013, and February 15, 2013, when the Small Claims Complaint was filed. The discovery rule does not help plaintiff as the limitation period began to run, at the latest, on February 15, 2013. Plaintiff filed his federal complaint over one year later on February 28, 2014. Defendant's motion for summary judgment on plaintiff's claims under 15 U.S.C. § 1692f(1) and 15 U.S.C. § 1692e(2)(A) should be granted.

3.    <u>False Communications—15 U.S.C. § 1692e(8)</u>

Defendant is also entitled to summary judgment on plaintiff's claim under 15 U.S.C. § 1692e(8), because this claim is barred by the one-year statute of limitations under the FDCPA. Defendant furnished information to credit reporting agencies on the Bingham Account on May 4, 2012 and February 5, 2013, both of which occurred outside the statute of limitations. (Def. Mtn.

Summ. J. 5.) Plaintiff does not dispute these facts. As such, defendant's motion for summary judgment on plaintiff's claim under 15 U.S.C. § 1692e(8) should be granted.

      B.    <u>Consumer Debts</u>

Defendant contends it is entitled to summary judgment because, under the FDCPA, the Bingham and Norco accounts are not "consumer debts" but debts of Prowell Ranch, a business.

The purpose of the FDCPA is to protect consumers against unfair debt collection practices. 15 U.S.C. § 1692(e). The term "consumer" is defined as: "[A]ny natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The term "debt" is defined as: "[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* ..." 15 U.S.C. § 1692a(5) (emphasis added).

Based on this definition, the Ninth Circuit has held the FDCPA does not apply to business-related debts. *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (*see also Smith v. Progressive Fin. Serv., Inc.*, 2013 WL 3995004, at *1 (D. Or. 2013); *Sun v. Rickenbacker Collection*, 2011 WL 704437, at *2 (N.D. Cal. 2011)). To characterize a debt as personal or business related, courts typically "examine the transaction as a whole," and focus on the "end uses" of the debt. *Bloom*, 972 F.2d at 1068 (quoting *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980)) (*see also Smith*, 2013 WL 3995004, at *1). When determining the type of debt, courts must treat substance over form. *Main v. Inv. Retrievers, Inc.*, 2014 WL 3579613, at *2 (D. Or. 2014) (citing *Slenk v. Transworld Sys. Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001)).

Defendant has failed to show there is no genuine issue of material fact that the Bingham and Norco Accounts were not incurred primarily for personal, family, or household purposes. Defendant

relies on the fact that at least some of the accounting services were for "Prowell Ranch," and plaintiff charged the welding supplies to his "Prowell Ranch" account at Norco. (Def. Mtn. Summ. J. 6; Sid Prowell Dep. 16:13–15, 17:19–21, Oct. 31, 2014; Sid Prowell Decl. ¶ 9, Dec. 19, 2014.) However, the question is whether the debts were incurred *primarily* for personal purposes, focusing on the end use of the debt. 15 U.S.C. § 1692a(5); *Bloom*, 972 F.2d at 1068.  *See also Davis v. Hollins Law*, 968 F.Supp.2d 1072, 1081 (E.D. Cal. 2013) (triable issues of fact existed as to whether the amount the debtor owed on a business card was traceable primarily to business purposes, rather than to personal purposes.)

Defendant argues that the Court should look no further than to note the link between "Prowell Ranch" and the debts as shown in the invoices.  However, in a declaration, plaintiff claims the acetylene he purchased at Norco was used for a home project unrelated to any business activities, and the accounting services rendered by Bingham were primarily for his personal tax return. (Prowell Decl. ¶¶ 5, 9.) Defendant argues the Court should disregard plaintiff's declaration as a sham contradicting earlier sworn testimony. (Def. Reply to Pltf. Resp. to Def. Mtn. Summ. J. 2–3.)[7] Defendant cites Ninth Circuit cases setting forth the general rule that a party cannot create an issue of fact with an affidavit contradicting his prior deposition testimony. *See Foster v. Arcata Assoc.,* 722 F.2d 1453, 1462 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048 (1986); *Radobenko v. Automated*

---

[7] For example, in his deposition testimony, Plaintiff admits the Bingham Account is "related" to the "Prowell Ranch" books. (Prowell Dep. 16:13–15.) Plaintiff also admits the Norco Account was charged to "Prowell Ranch." (Prowell Dep. 17:19–21.) But these associations between the Bingham and Norco Accounts and "Prowell Ranch" are not dispositive of the fact that the debts are business related, because Cam fails to establish that "Prowell Ranch" is a business. While Plaintiff admits to previously renting out some of his land in a business capacity, he also states that there is no land in "Prowell Ranch," that it is just an assumed name, and that he merely called it "Prowell Ranch" for address purposes. (Prowell Dep. 15:17–16:2, 17:4–12.)

11 –  FINDINGS AND RECOMMENDATION

*Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir. 1975) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572. 578 (2nd Cir. 1969)); *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

While defendant correctly states the general rule, it fails to acknowledge the rather broad exception set forth in *Kennedy*; that is, "the *Foster-Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony." *Kennedy*, 952 F.2d at 266–67. In creating the general rule, the Ninth Circuit was concerned parties would use "sham" testimony to "flatly contradict[] earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Id.* at 267. Thus, before disregarding a contradictory affidavit, "the district court must make a factual determination that the contradiction was actually a 'sham.'" *Id.*

There are no facts in the record suggesting plaintiff submitted the declaration to flatly contradict his deposition, create an issue of fact, and avoid summary judgment. Rather, the facts suggest plaintiff attached the declaration to his Response in an attempt to explain the confusing deposition testimony elicited from him by defendant's attorney at an earlier date. In fact, it is debatable whether defendant's declaration even contradicts his prior testimony, because his prior testimony is so unclear.

In his declaration, plaintiff clarifies that "Prowell Ranch" is his name for his personal property, and that he rents part of the land for pasture, but most of the money spent on the property is for personal purposes, and not in furtherance of any business. (Prowell Decl. ¶ 8.) Plaintiff also explains how the acetylene he purchased at Norco was used for a personal project, and the accounting services focused primarily on his personal tax return. (Prowell Dec. ¶¶ 5, 9.)

In light of these facts, the Court finds plaintiff's declaration was not a sham but, rather, a useful explanation of plaintiff's deposition testimony falling squarely within the *Kennedy* exception to the general rule set forth in *Foster* and *Radobenko*. As such, the Court may take plaintiff's declaration into consideration when deciding whether to grant defendant's motion for summary judgment on this issue. In addition, defendant has proffered no evidence that the welding purchases and  accounting services were primarily for business purposes other than the billing to Prowell Ranch. Making all reasonable inferences in favor of the nonmoving party, the Court finds that genuine issues of material fact exist as to whether the amounts owed by plaintiff on the Bingham and Norco Accounts are traceable primarily to business purposes. Defendant's motion for summary judgement on this issue should be denied.

C.    Preclusion

Defendant  argues that plaintiff is precluded from bringing this claim based upon the prior counterclaim filed in Small Claims Court.  Plaintiff's attorney Mr. Trigsted and Defendant's attorney Mr. Hasson were recently before the Court on a similar issue. *Pygott v. Metro Area Collection Serv., Inc.*, 2012 WL 1566232 (D. Or. 2012). In that case, Judge Coffin denied the defendant's motion for summary judgment based on preclusion for several reasons that are also applicable in this case. *Id.* at 3. First, as was the case in *Pygott*, it appears from the record that Judge Williams "did not address [Plaintiff's counterclaim] or ever entertain or consider it." *Id.* at 2. Second, there is "some question as to whether Oregon recognizes a Small Claims Court Judgment as one that can have preclusive effect." *Id.* at 3. And third, the "Restatement (Second) of Judgments § 28(3) (1982) provides that even if all other elements of preclusion are met 'a new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors

related to the allocation of jurisdiction between them.'" *Id.* For these reasons, defendant's motion for summary judgment should be denied on the preclusion issue.

      D.    <u>Settlement</u>

Finally, defendant argues that summary judgment should be granted because all of the issues in the case are settled and compromised. However, it is beyond dispute that plaintiff's counterclaim in small claims court was dismissed without prejudice prior to the settlement and payment by plaintiff. Defendant's citation to plaintiff's deposition testimony is not conclusive on this issue. (Hasson Decl. Ex. AA Prowell Dep. 30:22-23.) As such, plaintiff's FDCPA claim is not precluded and summary judgment on this issue should be denied.

II.    <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff contends it is entitled to partial summary judgment on its claims for declaratory judgment and statutory damages. Plaintiff concedes "there is no factual dispute that defendant is entitled to the bona fide error defense with respect to the filing [of the Small Claims Complaint] . . . ." (Pltf. Resp. to Def. Mtn. Summ. J. 7.) Plaintiff argues, however, that defendant's misrepresentations of the amount owed on April 3, 2014 and April 17, 2013 constituted independent FDCPA violations. (Pltf. Mtn. Summ. J. 7.) As set forth above, these misrepresentations were not independent violations of the FDCPA. However, even if the Court were to find that they were independent violations, there is a genuine issue of material fact as to whether defendant is entitled to the bona fide error defense.

The FDCPA's bona fide error defense provides:

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

14 – FINDINGS AND RECOMMENDATION

15 U.S.C. § 1692k(c). "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008) (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994)). "Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Launiger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

Defendant has demonstrated that if it violated the FDCPA, the violation was unintentional and resulted from a bona fide error. (Hickerson Dep. 48:13–50:23.) The only remaining dispute between the parties is whether defendant's procedures were reasonably adapted to avoid the violation.

Plaintiff argues defendant's procedures were not reasonably adapted to avoid the violation. (Pltf. Mtn. Summ. J. 8.) ("Defendant's FRCP 30(b)(6) representative on compliance has explained defendant's procedures as they pertain to the inflated interest amounts demanded in this case, and they are woefully inadequate.") Plaintiff takes issue with defendant allowing its clients to enter amounts themselves, defendant's failure to check amounts to make sure they were correct, defendant's training of employees, and defendant's failure to re-check the work of employees. (Pltf. Mtn. Summ. J. 8–9.)

Defendant, on the other hand, argues its procedures were more than sufficient to avoid the violation. (Def. Resp. to Pltf. Mtn. Summ. J. 5–6, 8–9.) ("[T]he testimony shows [the employee] was trained to enter the correct amounts, and she entered the correct amounts on most occasions . . . The allegation that Cam never checks its client's entries is false . . . A collection agency may reasonably

rely on the information provided by the creditor. *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006).") The Court finds there is a genuine dispute of material fact as to whether defendant maintained adequate procedures to avoid the alleged FDCPA violations. Plaintiff's motion for partial summary judgment should be denied.

## RECOMMENDATION

Defendant's Motion for Summary Judgment (Dk.#14) should be GRANTED. Plaintiff's Motion for Partial Summary Judgment (Dk.#17) should be DENIED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 23, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 6th day of March, 2015.

/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge

16 –  FINDINGS AND RECOMMENDATION